IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SETH REHFUSS,  :
    Petitioner,  :
          : No. 1:21-cv-00677
v.  :
          : (Judge Kane)
STEPHEN SPAULDING,  :
    Respondent  :

**MEMORANDUM**

On April 12, 2021, pro se Petitioner Seth Rehfuss ("Petitioner"), who is currently incarcerated at the Federal Prison Camp in Lewisburg, Pennsylvania ("FPC Lewisburg"), initiated the above-captioned action by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 (Doc. No. 1) and a memorandum in support thereof (Doc. No. 2). Petitioner seeks an Order directing the Bureau of Prisons ("BOP") to award him 189 days of earned time credit ("ETC") pursuant to the First Step Act ("FSA") and to immediately release him to home confinement.[1] (Doc. No. 1 at 8.) Petitioner paid the requisite filing fee on April 14, 2021. (Doc. No. 5.) Following an Order to show cause (Doc. No. 7), Respondent filed a response on May 3, 2021 (Doc. No. 8). After receiving a short extension of time (Doc. Nos. 9, 10), Petitioner filed his traverse on May 20, 2021 (Doc. No. 11). Accordingly, Petitioner's § 2241 petition is ripe for disposition.

---

[1] Petitioner claims entitlement to 189 and 185 days of ETC at various points in his submissions. (Doc. Nos. 1 at 8; 2 at 4.) Respondent states that "[t]he fate of the Petitioner is the same regardless of which number he uses, but for purposes of this Response, Respondent uses the greater relief requested." (Doc. No. 8 at 1.) The Court takes the same approach as Respondent.

I.     BACKGROUND

Petitioner is serving a fifty (50)-month term of incarceration imposed by the United States District Court for the District of New Jersey after Petitioner pled guilty to fraud and conspiracy to commit healthcare fraud, in violation of 18 U.S.C. §§ 286 and 371. (Doc. Nos. 8-2 at 2; 8-3.) Petitioner's current projected release date is January 26, 2022. (Doc. No. 8-2 at 2.)

The BOP has assessed Petitioner as having a minimum risk of recidivism and having anger/hostility and recreation/leisure/fitness criminogenic needs. (Doc. No. 8-6 at 12.) Petitioner was not assessed as having cognition, mental health, or work criminogenic needs. (Id.) Moreover, Petitioner's sentencing court recommended that he complete substance abuse treatment. (Doc. No. 8-5.) During his incarceration, Petitioner has completed various evidence-based recidivism reduction ("EBRR") programs and programming activities ("PA"), including the Residential Drug Abuse Treatment Program ("RDAP"), Narcotics Anonymous, Alcoholics Anonymous, Emotional Self-Regulation, the Arthritis Foundation Walk, and Brain Health as You Age. (Doc. No. 8-6 at 2.) Petitioner is on the waiting list to complete Anger Management. (Id. at 11.) Petitioner worked in the FCP Lewisburg Plumbing Shop from July 26, 2019 until August 26, 2020. (Doc. No. 8-2 at 9.) He has been assigned to the evening Food Service work detail from August 26, 2020 until the present. (Id.)

RDAP is an EBRR that corresponds to a substance abuse criminogenic need, and an inmate who successfully completes RDAP is entitled to 500 hours of ETC. (Id. at 5.) Alcoholics Anonymous and Narcotics Anonymous are PAs that correspond to a substance abuse criminogenic need, and the successful completion of each entitles an inmate to 50 hours of ECT. (Id. at 7-8.) The Arthritis Foundation Walk and Brain Health as You Age are PAs that

correspond to a recreation/leisure/fitness criminogenic need, and the successful completion of each entitles an inmate to six (6) and five (5) hours of ECT, respectively. (Id. at 7.) Emotional Self-Regulation is an EBRR that corresponds to cognition and mental health criminogenic needs. (Id. at 6.)

On March 25, 2020, Petitioner received a Summary Re-Entry Plan recommending that he receive a minimum of 120 days in a halfway house. (Doc. No. 8-6 at 15.)[2] On June 3, 2020, Case Management Coordinator Reibsome referred Petitioner for halfway house placement to begin on July 31, 2021, 179 days before his January 26, 2022 projected release date. (Id. at 3, 17-18.) This placement date "takes into consideration the recommendation for a minimum of 120 days of halfway house placement and thirty days of [ETC] under the [FSA]." (Id. at 3.) Based on availability, Petitioner was given a halfway house report date of August 3, 2021. (Id.)

In his § 2241 petition, Petitioner asks that the Court direct the BOP to give him 189 days of ETC and that these days "be applied to Home Confinement and thus be put in for immediate release rather than the August 3, 2021 date that the BOP has given him without his ETC." (Doc. No. 2 at 1.) Petitioner asserts that he is entitled to ETC for being an essential worker during the COVID-19 lockdown. (Id. at 2.) Petitioner also maintains that he is entitled to ETC for completing Anger Management. (Id.) Petitioner admits that he did not exhaust his administrative remedies but asserts that exhaustion is futile and that the "statutory construction" exception applies. (Id. at 3.)

---

[2] In his § 2241 petition, Petitioner contends that staff recommended that he received 365 days of halfway house placement. (Doc. No. 2 at 2.) He attaches a document purporting to show this recommendation. (Doc. No. 1-1 at 11.) Case Management Coordinator Reibsome, however, avers that the page showing 365 days of placement does not appear in Petitioner's BOP file. (Doc. No. 8-6 at 3.)

## II. DISCUSSION

Respondent asserts that Petitioner's § 2241 petition should be denied because: (1) Petitioner failed to exhaust his administrative remedies; and (2) Petitioner has received all ETC that he is eligible to earn under the FSA. (Doc. No. 8 at 6.) The Court considers each argument in turn.

### A. Exhaustion of Administrative Remedies

While § 2241 does not contain an explicit statutory exhaustion requirement, the United States Court of Appeals for the Third Circuit has consistently required a petitioner to exhaust his administrative remedies before filing a § 2241 petition. See Moscato v. Fed. Bureau of Prisons, 98 F.3d 757, 760 (3d Cir. 1996). Exhaustion is required "for three reasons: (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." See id. at 761-62 (citing Bradshaw v. Carlson, 682 F.2d 1050, 1052 (3d Cir. 1981)). Thus, "a federal prisoner who . . . fails to exhaust his administrative remedies because of a procedural default, and subsequently finds closed all additional avenues of administrative remedy, cannot secure judicial review of his habeas claim absent a showing of cause and prejudice." See id. at 762. Exhaustion, however, is not required when it would not promote these goals, such as when exhaustion would be futile. See, e.g., Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998).

The BOP has a multi-step administrative remedy program allowing an inmate "to seek formal review of an issue relating to any aspect of his/her own confinement." See 28 C.F.R. § 542.10(a). First, an inmate should attempt inform resolution of the issue with the appropriate

4

staff member. See id. § 542.13(b). If informal resolution is unsuccessful, the inmate may submit a formal written grievance, using the BP-9 form, to the Warden within twenty (20) calendar days "following the date on which the basis for the Request occurred." See id. § 542.14(a). The Warden is to respond to the request within twenty (20) calendar days. See id. § 542.18. An inmate dissatisfied with the Warden's response may appeal, using the BP-10 form, "to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response." See id. § 542.15(a). Finally, an inmate may appeal the Regional Director's response, using the BP-11 form, to the BOP's General Counsel "within 30 calendar days of the date the Regional Director signed the response." See id.

Petitioner concedes that he did not exhaust his administrative remedies prior to filing his § 2241 petition. (Doc. No. 2 at 2-3.) Petitioner did submit an Inmate Request to Staff, asking for his ETC to be calculated and to be considered for home confinement on the "next available date." (Doc. No. 1-1 at 27.) Petitioner's administrative remedy record, however, indicates that Petitioner has not filed a single former administrative remedy regarding the calculation of his ETC. (Doc. No. 8-2 at 7-8.) Rather, Petitioner submitted an administrative remedy seeking compassionate release on July 10, 2020. (Id. at 8.)

Petitioner suggests that exhaustion should be excused because it is futile and because the "statutory construction exception" to administrative exhaustion applies. (Doc. No. 2 at 3.) However, even if Petitioner thought pursuit of his administrative remedies would be futile, "[c]ourts in the Middle District of Pennsylvania have consistently held that 'exhaustion of administrative remedies is not rendered futile simply because a prisoner anticipates he will be unsuccessful in his administrative appeals.'" See Ross v. Martinez, No. 4:09-cv-1770, 2009 WL

5

4573686, at *3 (M.D. Pa. Dec. 1, 2009) (quoting Malvestuto v. Martinez, No. 1:09-cv-1339, 2009 WL 2876883, at *3 (M.D. Pa. Sept. 1, 2009)); see also Suarez-Sanchez v. Lane, No. 4:18-cv-1431, 2019 WL 1645231, at *3-4 (M.D. Pa. Mar. 5, 2019) (concluding that the petitioner's § 2241 petition was subject to dismissal for failure to exhaust because the petitioner "never fully and properly appealed [his] grievance because he apparently deemed the grievance process to be a waste of time"), report and recommendation adopted, 2019 WL 1620339 (M.D. Pa. Apr. 16, 2019).

The Court recognizes that administrative exhaustion is not required if "the issue presented only pertains to statutory construction." See Kurti v. White, No. 1:19-cv-2109, 2020 WL 2063871, at *3 (M.D. Pa. Apr. 29, 2020). In support of his argument, Petitioner cites to Goodman v. Ortiz, No. 20-7582 (RMB), 2020 WL 5015613 (D.N.J. Aug. 25, 2020). In Goodman, the parties did not dispute that the inmate-petitioner had successfully participated in several PAs that met the requirements of the FSA or had earned a specific number of ETC. See Goodman, 2020 WL 5015613, at *2. Instead, the court considered whether the FSA required that the ETC earned by the petitioner be applied before January 15, 2022. See id. The court concluded that the inmate-petitioner was exempt from the administrative exhaustion requirement because the matter "present[ed] a narrow dispute of statutory construction" and because "habeas relief should be granted." See id. at *3. The instant case, however, involves Petitioner's eligibility for ETC based upon his participation in various EBRRs and PAs during his incarceration. The parties do not agree on the specific number of ETCs earned by Petitioner. These issues are unrelated to statutory construction and, therefore, the exhaustion requirement cannot be excused. See Kurti, 2020 WL 2063871, at *3 (noting that the petitioner "has clearly

6

failed to exhaust administrative remedies with respect to the time credit he requests"); see also Cohen v. United States, No. 20-cv-10833 (JGK), 2021 WL 1549917, at *4 (S.D.N.Y. Apr. 20, 2021) (concluding that the inmate-petitioner was not excused from exhausting because the parties disputed his "eligibility for, participation in, and applicability of the various programs he claims to have completed to any potential time credits under the FSA"); Maggio v. Joyner, No. 7:21-21-DCR, 2021 WL 1804915, at *1-2 (E.D. Ky. Mar. 25, 2021) (concluding same to determine that the inmate-petitioner's § 2241 petition was subject to dismissal for failure to exhaust). Thus, the Court agrees with Respondent that Petitioner's § 2241 petition must be dismissed for failure to exhaust his administrative remedies. Nevertheless, the Court will address the merits of his petition below.

### B. Merits of Petitioner's § 2241 Petition

Under the FSA, the Attorney General was charged with development and release of a Risk and Needs Assessment System ("the System") within 210 days of December 21, 2018, the date on which the FSA was enacted. See 18 U.S.C. § 3632. The System is to be used for: (1) determining an inmate's recidivism risk; (2) assessing an inmate's risk of violent or serious misconduct; (3) determining the type and amount of EBRR programming appropriate for each inmate; (4) periodically assessing an inmate's recidivism risk; (4) reassigning an inmate to appropriate EBRRs and PAs; (5) determining when to provide incentives and rewards for successful participation in EBRRs and PAs; and (6) determining when the inmate is ready to transfer to pre-release custody or supervised release. See id. § 3632(a). Moreover, the System provides guidance on the "type, amount, and intensity of EBRR programs and PAs to be

assigned to each inmate based on the inmate's specific criminogenic needs." See Kurti, 2020 WL 2063871, at *4 (citing 18 U.S.C. § 3632(b)).

The FSA allows eligible inmates who successfully complete EBRRs or PAs to receive earned time credits to be applied toward time in pre-release custody or supervised release. See 18 U.S.C. § 3632(d)(4)(A). An inmate may earn ten (10) days of credit for every thirty (30) days of successful participation. See id. Moreover, eligible inmates who have been assessed at a minimum or low risk of recidivism who do not increase their risk of recidivism over two (2) consecutive assessments may earn five (5) days of time credit for every thirty (30) days of successful participation. See id. However, an inmate may not earn time credits for EBRR programs completed prior to the enactment of the FSA. See id. § 3632(d)(4)(B)(i). The Attorney General was allowed 210 days after the FSA was enacted to develop and publish the System, which the BOP then used as a guide to implement the EBRRs and PAs. See id. § 3632(a). The Attorney General published the System on July 19, 2019, and the BOP then had 180 days, or until January 15, 2020, to implement the System, complete assessments, and begin to assign prisoners to appropriate EBRRs. See Kurti, 2020 WL 2063871, at *4 (citing 18 U.S.C. § 3621(h)). This Court has previously held that inmates cannot earn time credits for EBRRs and PAs completed before January 15, 2020. See id. at *5 (citing 18 U.S.C. § 3632(d)(4)(B)(i)).[3]

As an initial matter, Petitioner asserts that the BOP is acting contrary to the FSA by taking the position that "a prisoner can earn no applicable benefit for programming prior to January 15, 2022." (Doc. No. 2 at 3.) Petitioner's argument, however, clearly lacks merit. The

---

[3] The Court recognizes that the United States District Court for the District of New Jersey has concluded that inmates are eligible to earn ETCs for EBRRs and PAs completed on or after December 21, 2018. See Hare v. Ortiz, No. 20-14093, 2021 WL 391280, at *7 (D.N.J. Feb. 4, 2021). Hare, however, is not binding on this Court.

BOP must "phase in" its implementation of the System as to all prisoners within two (2) years of its implementation. See 18 U.S.C. §§ 3621(h), 3632(a). Accordingly, because the BOP had until January 15, 2020 to implement the System, the outer-most date for it to be fully implemented as to all prisoners is January 15, 2022. However, as noted supra, the System has already been implemented as to Petitioner, and he has already been credited with thirty (30) ETCs pursuant to the FSA. (Doc. No. 8-6 at 3, 17-18.)

Petitioner also is not entitled to the 189 days of ETC that he seeks. ETC credits "are earned only when an inmate successfully completes one of the BOP-approved EBRR programs or PAs related to one of the particular needs assigned to that inmate." See Hare v. Ortiz, No. 20-14093, 2021 WL 391280, at *9 (D.N.J. Feb. 4, 2021). The BOP has assessed Petitioner as having a minimum risk of recidivism and having anger/hostility and recreation/leisure/fitness criminogenic needs. (Doc. No. 8-6 at 12.) Petitioner was not assessed as having cognition, mental health, or work criminogenic needs. (Id.) Moreover, Petitioner's sentencing court recommended that he complete substance abuse treatment. (Doc. No. 8-5.)

As an initial matter, contrary to Petitioner's assertion, he has not completed Anger Management because he is on the waiting list for that program. (Doc. No. 8-6 at 11.) Petitioner is not entitled to ETC for a program he has not yet successfully completed. See 18 U.S.C. § 3632(d).[4] Moreover, while Petitioner has completed Emotional Self-Regulation (Doc. No. 8-6 at 2), that program does not correspond to a need Petitioner was assessed as having. Emotional

---

[4] In his traverse, Petitioner has included a copy of a certificate indicating that he completed the Anger Management Group on December 4, 2019. (Doc. No. 11 at 35.) Even assuming that this group is a qualified EBRR or PA, Petitioner would not be entitled to ETCs for its completion because he completed it before January 15, 2020. See Kurti, 2020 WL 2063871, at *5 (citing 18 U.S.C. § 3632(d)(4)(B)(i)).

9

Self-Regulation is an EBRR that corresponds only to cognition and mental health criminogenic needs. (Id. at 6.) Likewise, Petitioner cannot earn ETC for his work details because he has not been assessed as having a work criminogenic need. Even if Petitioner had been assessed with a work criminogenic need, his work details in the Plumbing Shop and Food Service do not qualify as EBRRs or PAs. (Doc. No. 8-6 at 4-9.) Petitioner, therefore, is not entitled to ETCs for his work details and for completing Emotional Self-Regulation. See Hare v. Ortiz, No. 20-14093, 2021 WL 1346253, at *1 (D.N.J. Apr. 12, 2021) (noting that "[o]nly those EBRRs and PAs described in the First Step Act Approved Programs Guide qualify for Time Credits under the FSA"); Butler v. Bradley, No. CV 20-11211 DMG (RAO), 2021 WL 945252, at *4 (C.D. Cal. Feb. 22, 2021) (noting that "[i]f an inmate could accrue FSA credits by participating in any type of recidivism-reduction program or activity, the statutory language instructing the BOP to establish and implement an individualized risk and needs assessment system, 18 U.S.C. § 3632(a), (b), would be superfluous").

Petitioner has received 611 hours of EBRR and PA completion for completing RDAP, Alcoholics Anonymous, Narcotics Anonymous, Arthritis Foundation Walk, and Brain Health as You Age. (Doc. No. 8-6 at 3, 4-9.) The FSA, however, permits the BOP to award ETC only in terms of days. See 18 U.S.C. § 3632(d)(4)(A)(i), (ii). Under the BOP's regulations, a day "is considered eight hours for purposes of calculating credit under the FSA." (Doc. No. 8-6 at 3.) Therefore, "an inmate is entitled to ten days of creditable time for every 240 hours of programming completed. An inmate with a minimum recidivism risk is eligible for fifteen days for every 240 hours of completed programming." (Id.) In the instant case, Petitioner's 611 hours equates to two (2) 240-hours periods because the "FSA does not provide for partial ETC

10

awards." (Doc. No. 8 at 15 n.9.)  Because Petitioner has been assessed as having a minimum risk for recidivism, he has received two (2) 15-day blocks of ETC for a total of thirty (30) ETCs.  The record reflects that the BOP applied these ETCs to increase the amount of Petitioner's halfway house time from 120 days, as initially recommended, to 179 days.  (Doc. No. 8-6 at 3, 17-18.)  Petitioner has received the ETC for which he is eligible, and those credits have been applied to determine the report date for his halfway house placement.  His § 2241 petition will, therefore, be denied.

### III. CONCLUSION

For the foregoing reasons, the Court will deny Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  (Doc. No. 1.)  An appropriate Order follows.